[Cite as *Barr v. Lorain Cty. Dept. of Job & Family Servs.*, 2020-Ohio-4344.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

BARBARA BARR

    Appellant

    v.

LORAIN COUNTY DEPARTMENT OF
JOB AND FAMILY SERVICES

    Appellee

C.A. No.     19CA011542

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    16CV190175

DECISION AND JOURNAL ENTRY

Dated: September 8, 2020

CARR, Presiding Judge.

{¶1}    Appellant Barbara Barr appeals from the judgment of the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2}    This Court previously summarized the history of this case in a prior appeal:

In 2014, Ms. Barr was employed by Defendant-Appellee the Lorain County Department of Job and Family Services ("the Agency") as a clerical supervisor. At that time, she had worked for the Agency for over 20 years. As a clerical supervisor, Ms. Barr supervised four intake workers at the front desk. In addition, individuals referred to as W.E.P. workers worked for the Agency. These individuals were actually clients of the Agency who were required to work a certain number of hours for the Agency in order to receive public benefits. Ms. Barr also had W.E.P. workers under her supervision. One of those W.E.P. workers was P.R.

On April 1, 2014, Ms. Barr was removed from her position. Following pre-disciplinary conferences, at which time P.R. provided a statement that was recorded, Ms. Barr was demoted to the position of data entry operator 2. This was a demotion in position and pay rate.

At the time of her demotion, Ms. Barr's son was addicted to heroin. Understandably, Ms. Barr was very concerned for her son's welfare. Inter alia, the

Agency alleged that Ms. Barr involved P.R. in these concerns and inappropriately used her work computer to look up an individual on a court website. With respect to the former allegation, on March 19, 2014, Ms. Barr asked P.R. if she recognized any phone numbers on a list, which contained numbers that Ms. Barr believed to be drug dealers and which Ms. Barr was considering turning over to the police. When P.R. indicated that she did recognize a number, Ms. Barr allegedly told P.R. to tell the person to not sell Ms. Barr's son drugs anymore. Later that day, someone called Ms. Barr's son and threatened their lives if Ms. Barr went to the police with the phone numbers. Ms. Barr then got in touch with P.R. and told P.R. to tell the person that Ms. Barr was not going to give the numbers to the police. The next day Ms. Barr requested that P.R. be reassigned allegedly both because someone had been making mistakes in the area where P.R. worked and because of the events the previous day.

Ms. Barr appealed the demotion to the State Personnel Board of Review ("SPBR"). A hearing was held before an administrative law judge ("ALJ"), at which P.R. did not testify, but her prior statement was played. The ALJ issued a report and recommendation, in which the ALJ made several findings and recommended that Ms. Barr's demotion be affirmed.

Ms. Barr filed objections to the ALJ's report and recommendation. SPBR heard oral argument and thereafter issued an order. SPBR adopted the findings of the ALJ but modified the ALJ's recommendation. SPBR concluded that:

"The record reflects that Appellant misused her position for personal reasons. However, Appellant's actions must be counterbalanced with her many years of satisfactory service with Appellee in her position. Further, Appellant's rather unique and difficult personal circumstances that unquestionably impacted on her behavior in this matter seem unlikely to be repeated. Finally, if Appellant is prospectively restored to her former position or a comparably-ranked position/pay, she still will have paid a hefty monetary penalty for her actions. This should certainly sensitize her to the need to carefully and faithfully follow all of Appellee's practices and procedures going forward.

Wherefore, it is hereby ORDERED that Appellant's instant REDUCTION be MODIFIED to a FINE equivalent to the sum owed to Appellant representing the difference between her current pay and her back pay arising from restoration to her former classification of Clerical Supervisor, commencing from the effective date of the reduction until the final Order of this Board, pursuant to R.C. 124.03 and R.C. 124.34."

(Emphasis in original.)

Ms. Barr then appealed to the court of common pleas. Ms. Barr argued that SPBR's finding that she misused her position for personal reasons was not supported by the evidence. In so doing, Ms. Barr challenged the consideration of P.R.'s unsworn statement at the hearing held by the ALJ. In addition, Ms. Barr asserted that, even

if the Agency established a minor violation, the sanction was not warranted. The Agency filed a brief in opposition and a hearing was held. The court of common pleas issued a decision affirming SPBR's order.

The court of common pleas concluded that one of the Agency's arguments was dispositive of the appeal: "the imposition of a fine, which is a penalty, is not subject to appeal." It concluded that, pursuant to *Henry's Cafe, Inc. v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959), the court could not review the propriety of the decision of SPBR to restore Ms. Barr to her prior position without back pay. It does not appear that the court of common pleas considered the merits of whether the decision of SPBR that Ms. Barr committed misconduct was supported by the record.

*Barr v. Lorain Cty. Dept. of Job & Family Servs.*, 9th Dist. Lorain No. 18CA011334, 2019-Ohio-2597, ¶ 2-8.

{¶3} Ms. Barr appealed the decision of the court of common pleas to this Court. *Id.* at ¶ 9. This Court concluded that Ms. Barr was "challenging an issue that the court of common pleas did not review." *Id.* at ¶ 13. Specifically, we stated that "we can only conclude that court of common pleas did not review whether SPBR's conclusion that Ms. Barr engaged in misconduct was supported by the evidence. Instead, the court of common pleas specifically found that the Agency's fourth proposition of law was determinative of the entire appeal. That proposition was that 'the imposition of a fine, which is a penalty, is not subject to appeal.'" *Id.* Thus, we remanded the matter to the court of common pleas "for it to consider the merits of Ms. Barr's argument." *Id.* at ¶ 15.

{¶4} Upon remand, the court of common pleas issued a journal entry incorporating its prior decision and determining that "SPBR's conclusion that Ms. Barr engaged in misconduct was supported by the evidence." (Emphasis omitted.)

{¶5} Ms. Barr has appealed, raising three assignments of error for our review. They will be addressed out of sequence to facilitate our analysis.

II.

**Standard of Review**

{¶6} "Pursuant to R.C. 119.12, when a common pleas court reviews an order of an administrative agency, the court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and that the order is in accordance with the law." (Internal quotations omitted.) *Horn v. Ohio Dept. of Ins.*, 9th Dist. Lorain No. 15CA010892, 2017-Ohio-231, ¶ 10, quoting *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980).

> The common pleas court's review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence[,] and the weight [to be given it]. However, the findings of the agency are by no means conclusive. Accordingly, a court of common pleas may not substitute its judgment for that of an administrative agency, but must weigh the evidence in the record, including witness credibility.

(Internal citations and quotations omitted.) *Horn* at ¶ 10.

{¶7} "Our review is even more limited than that of the court of common pleas. Unlike the court of common pleas, we do not determine the weight of the evidence. On appeal, this court will only determine if the [court of common pleas] abused its discretion." (Internal citations and quotations omitted.) *Barr* at ¶ 12.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT ERRED BY NOT REVERSING THE SPBR'S ORDER BECAUSE IT RELIED UPON UNSWORN TESTIMONY OF A WITNESS WHO NEVER APPEARED AT THE HEARING BEFORE THE ALJ.

{¶8} Ms. Barr argues in her second assignment of error that the court of common pleas erred in failing to reverse SPBR's decision when it relied on the unsworn recorded statement of P.R. In so doing, Ms. Barr argues that P.R. was not an unavailable witness under Evid.R. 804.

{¶9} Ms. Barr argues that SPBR should not have relied upon the unsworn recorded statement of P.R. That statement was recorded in a predisciplinary conference at which P.R. was also subject to questioning by Ms. Barr's counsel. When P.R., who was subpoenaed, failed to appear at the hearing conducted by the ALJ, the Agency moved to have P.R.'s recorded statement played and admitted into evidence. While Ms. Barr's counsel objected to the consideration and admission of the recording at the hearing conducted by the ALJ, the evidence was admitted. Ms. Barr's counsel continued to challenge its consideration in subsequent proceedings.

{¶10} Notably, however, a predisciplinary conference report which summarized P.R.'s statements was also admitted into evidence over Ms. Barr's counsel's objection. Consideration of that report has not been challenged on appeal. *See* App.R. 16(A)(7). Ms. Barr has not explained how the court of common pleas abused its discretion in upholding SPBR's consideration of the recorded statement in light of the fact that it also had before it the predisciplinary conference report which contained similar information. *See Pascual v. Pascual*, 9th Dist. Medina No. 12CA0036-M, 2012-Ohio-5819, ¶ 6 ("[I]t is well settled that [a]ppellants have the burden of affirmatively demonstrating error on appeal.") (Internal quotations omitted.).

{¶11} Notwithstanding the foregoing, we still cannot say that Ms. Barr has demonstrated the court of common pleas abused its discretion. Ms. Barr correctly notes that Ohio Adm.Code 124-9-01 states that "[t]he rules of evidence prevailing in civil actions in Ohio courts of general jurisdiction are adopted for use in hearings before the board, except as modified by these rules." Ms. Barr then thoroughly discusses Evid.R. 804 and argues that P.R.'s statement does not comply with it. But what Ms. Barr only addresses in a conclusory fashion is the very next regulation: Ohio Adm.Code 124-9-02, which provides that "[t]he board may permit the introduction of evidence otherwise excludable as hearsay. A foundation, establishing both the reliability of the

testimony and its necessity, shall be laid before hearsay may be admitted." While Ms. Barr asserts that "neither the reliability nor the necessity of hearsay was established and, of course, [P.R.] was never subjected to cross-examination[,]" Ms. Barr has not developed any argument explaining why this is so. *See* App.R. 16(A)(7). Further, while Ms. Barr maintains that P.R. was not subject to cross-examination because P.R. was not under oath at the predisciplinary conference, it is undisputed that P.R. was subject to questioning by Ms. Barr's counsel and there was also evidence that P.R. was subpoenaed and yet failed to attend the hearing before the ALJ. Finally, this Court has also noted that, in general, "the hearsay rule is relaxed in administrative hearings." *Smith v. Richfield Twp. Bd. of Zoning Appeals*, 9th Dist. Summit No. 25575, 2012-Ohio-1175, ¶ 33. Given the foregoing, we cannot say that Ms. Barr has demonstrated that the court of common pleas abused its discretion. *See Pascual* at ¶ 6.

{¶12} Ms. Barr's second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN AFFIRMING THE DECISION OF THE STATE PERSONNEL BOARD OF REVIEW ON THE FACTS.

{¶13} Ms. Barr argues in her first assignment of error that the court of common pleas abused its discretion in determining that SPBR's conclusion that Ms. Barr engaged in misconduct was supported by the evidence. Ms. Barr asserts there is no competent, credible evidence that she misused her position or the Agency's computer for personal reasons.

{¶14} In the report and recommendation, the ALJ made several findings of fact, which were adopted by SPBR. Those findings of fact included the following:

1. At the time of her demotion, Appellant Barr was a Clerical Supervisor and had been employed with Appellee for approximately twenty years. Her past discipline consists of a verbal warning in June[] 2012.

2. As a long-term employee and a supervisor, Appellant Barr was familiar with Appellee's Code of Responsibility and Appellee's other standards and policies.

3. On March 19, 2014, Appellant Barr asked a WEP worker under her supervision, [P.R.], to look at a list of phone numbers and see if she recognized any of them. Appellant Barr believed that these numbers belonged to individuals who had been selling drugs to her son and that she was thinking of turning the phone numbers over to the police. When [P.R.] stated that she did know one of the numbers, Appellant Barr instructed [P.R.] to tell that individual to stop selling drugs to Appellant Barr's son. After her son received a threatening phone call that same day, Appellant Barr messaged [P.R.] on Facebook, then talked to her on the phone and asked her to tell the individual that she was not going to give any of the telephone numbers to the police.

4. On March 20, 2014, Appellant Barr requested that [P.R.] be reassigned, due to the events of the previous day and due to the fact that she had to determine i[f P.R.] was making mistakes on her work.

5. In March[] 2014, Appellant Barr searched the Lorain County Court website for information pertaining to [J.M.], on her work computer, in violation of Appellee's Internet and Groupwise Policy.

{¶15} In the conclusions of the ALJ, the ALJ determined that Ms. Barr engaged in a pattern of involving a W.E.P. worker in Ms. Barr's personal activities on paid time. In so doing, the ALJ found that Ms. Barr's testimony was not credible. Additionally, the ALJ concluded that Ms. Barr misused agency time, resources, and equipment when she used the Agency's computer to determine if there were any outstanding warrants for J.M. The ALJ recommended that Ms. Barr's demotion be affirmed. The SPBR "adopt[ed] the findings of the ALJ and modifie[d] the Recommendation[.]" Specifically, the SPBR agreed that the record reflected that Ms. Barr misused her position for personal reasons but concluded that Ms. Barr's many years of satisfactory performance, as well as the unique personal circumstances that led to Ms. Barr's behavior that were unlikely to be repeated, mitigated her conduct. Thus, SPBR prospectively restored Ms. Barr to her position but ordered that she be subject to a fine equivalent to the back pay she would otherwise be due.

## Ms. Barr's Misuse of her Position for Personal Reasons

{¶16}  Ms. Barr first asserts that the court of common pleas abused its discretion in concluding that the record supported that she misused her position for personal reasons.  Here, much of Ms. Barr's argument centers on the consideration of P.R.'s unsworn recorded statement, which was addressed above.  Ms. Barr again argues that the statement should not have been considered.  As we have already reviewed that issue above and concluded that the court of common pleas did not abuse its discretion, we overrule Ms. Barr's argument in this context as well.

{¶17}  We cannot say that the court of common pleas abused its discretion in concluding that reliable, probative, and substantial evidence supported that Ms. Barr misused her position for personal reasons.  As a clerical supervisor, Ms. Barr supervised four intake workers at the front desk.  In addition, W.E.P. workers worked for the Agency, who were actually clients of the Agency and were required to work a certain number of hours for the Agency in order to receive public benefits.  At the time of the events, one of those W.E.P. workers, P.R. was supervised by Ms. Barr. Unfortunately, Ms. Barr's adult son was addicted to heroin.  Understandably, this caused Ms. Barr much concern and worry.  On March 19, 2014, Ms. Barr had a list of phone numbers with her at her office at the Agency that she obtained from her son's phone bill.  She thought that the phone numbers in the list might belong to individuals with whom her son was doing drug-related business.  Ms. Barr asked P.R. whether she knew any of the numbers.  P.R. replied that she did; one of them was the father of P.R.'s child.  Ms. Barr told P.R. that she was thinking of turning the list over to the police.  P.R. asserted in her statement that Ms. Barr told P.R. to tell the father of P.R.'s child to leave Ms. Barr's son alone with respect to drugs.  Ms. Barr denied telling P.R. to tell the father of her child this but the ALJ did not find Ms. Barr's testimony credible.  P.R. told Ms. Barr that she was not talking to the father of her child and Ms. Barr told P.R. that she did not

have to relay the message then. Ms. Barr acknowledged during her testimony that it was not responsible of her to involve P.R. in the conversation and admitted that she should not have done it.

{¶18} That same day, when both Ms. Barr and P.R. were no longer at work, Ms. Barr's son received a call from someone threatening to kill Ms. Barr and her son if the numbers were turned over to the police. Given the concerning nature of the call, Ms. Barr got in touch with P.R. Ms. Barr testified that she called P.R. in order to relay to her that Ms. Barr was not going to the turn the numbers over to the police in hope that P.R. would get that message back to whoever she told.

{¶19} The following day, Ms. Barr spoke with an Agency employee, Ralph Berrios, who assigns W.E.P. workers to jobs and asked for him to reassign P.R. Ms. Barr testified that the main reason for wanting P.R. to be reassigned was that there was a concern that either P.R. or an employee of the Agency was making errors and in order to find out who was making the errors, it was necessary to transfer P.R. Ms. Barr acknowledged that, later that day, she also told Mr. Berrios that there were some personal issues between Ms. Barr and P.R. Ms. Barr admitted that she "didn't want to have any more conversations with [P.R.] in regards to [Ms. Barr's] son." Ultimately, Mr. Berrios made the decision to reassign P.R.

{¶20} In light of the record before us, and the argument made on appeal, we cannot say that Ms. Barr demonstrated that the court of common pleas abused its discretion in declining to reverse SPBR's determination that Ms. Barr misused her position for personal reasons. Ms. Barr herself admitted that she should not have involved P.R. in the initial conversation about the phone numbers. And while Ms. Barr disputes that she told P.R. to tell the father of her child to leave Ms. Barr's son alone, this Court has noted that "a common pleas court must give due deference to the

administrative agency's resolution of evidentiary conflicts." *Smith*, 2012-Ohio-1175, at ¶ 33; *see also Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980) ("[W]hen the evidence before the court consists of conflicting testimony of approximately equal weight the court should defer to the determination of the administrative body, which, as the factfinder, had the opportunity to observe the demeanor of the witnesses and weigh their credibility."). While all of the conduct did not take place during work hours, Ms. Barr nonetheless involved a client of the Agency, P.R., whom Ms. Barr was supervising, in a potentially dangerous situation. Ms. Barr used her position of authority to attempt to get more information about a personal matter. Then Ms. Barr expected P.R. to communicate Ms. Barr's concerns with someone believed to be involved in drugs. Drugs are indisputably a dangerous business. Ms. Barr herself acknowledged that her conduct was not responsible. Ms. Barr has not established that the court of common pleas abused its discretion.

### Ms. Barr's Misuse of the Agency's Computer

{¶21} Ms. Barr also maintains that the court of common pleas abused its discretion in failing to reverse SPBR's conclusion that she misused the Agency's computer by investigating whether J.M. had an outstanding arrest warrant. Prior to March 2014, Ms. Barr knew J.M. because he did landscaping for her. At some point, Ms. Barr discovered that J.M. was supplying drugs to her son. Ms. Barr testified that in March 2014, the Agency security guard told her there was a man, who was "acting crazy" and was walking in and out of the Agency and in and out of the restroom. The security guard pointed the man out to Ms. Barr and that man was J.M. Ms. Barr then went into her office and used her office computer to look up on the common pleas' website whether J.M. had any outstanding arrest warrants. He did not. Ms. Barr did not do anything with the information she obtained. Ms. Barr asserted that she looked up J.M. to protect her staff and thought it was within her responsibilities. The internet search took just over a minute. An

employee, who was at the time supervised by Ms. Barr, confirmed that there was a time when an individual came into the Agency and was acting suspiciously, walking in and out of the building. In addition, Ms. Barr's husband testified that he and Ms. Barr saw the security guard at a restaurant and the security guard brought up J.M. acting suspicious.

{¶22} The security guard, however, testified that she did not remember J.M. being at the Agency and walking around and acting suspicious. The security guard also denied talking with Ms. Barr and her husband at a restaurant about J.M.'s behavior.

{¶23} Marge Kiley, the program administrator for the Agency, testified that Ms. Barr, in her position as a front desk supervisor, should not have been running background checks on anyone. Ms. Kiley asserted that Ms. Barr did not have the authority to run a background check on J.M. or to check if there were warrants on him. Ms. Kiley cited to the Agency "Internet and Groupwise Policy" in support of her contention, which was admitted into evidence. That policy states, in part, that "I understand that [the Agency] computers and information systems are the property of ODJFS/[the Agency] and may only be used for explicitly authorized purposes."

{¶24} We cannot say that Ms. Barr demonstrated that the court of common pleas abused its discretion in affirming the determination of SPBR. The ALJ concluded that Ms. Barr violated the Agency's internet policy. That policy provided that computers could only be used for explicitly authorized purposes and there was testimony that Ms. Barr was not authorized to check on the computer whether J.M. had an outstanding warrant. It is also clear from the record that the ALJ did not believe Ms. Barr's explanation that Ms. Barr looked up J.M.'s court records to protect her staff. Because of that, it is also possible that the ALJ believed that Ms. Barr was looking up J.M.'s court records for her own personal reasons in light of J.M.'s association with Ms. Barr's son's drug activity.

{¶25} Ms. Barr has not demonstrated that the court of common pleas abused its discretion. Ms. Barr's first assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT THE BOARD'S IMPOSITION OF A "FINE" EQUIVALENT TO BARR'S BACK PAY CANNOT BE CHALLENGED ON APPEAL IF IT FINDS RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE TO SUPPORT THE ORDER.

{¶26} Ms. Barr argues in her third assignment of error that, because the court of common pleas erred in concluding that reliable, probative, and substantial evidence supported SPBR's decision that Ms. Barr misused her position for personal reasons, she should not be subject to a fine. In addition, while seemingly acknowledging that the precedent in *Henry's Café, Inc.,* 170 Ohio St. at 233, is applicable to her situation, she nonetheless urges this Court to overrule it.

{¶27} As to Ms. Barr's first contention, this Court has already concluded that the court of common pleas did not abuse its discretion in affirming SPBR's decision that Ms. Barr misused her position. Thus, her first argument is without merit.

{¶28} As to her second contention, this Court has no authority to sustain her argument and overrule a decision of the Ohio Supreme Court. In *Henry's Café, Inc.*, the Supreme Court of Ohio stated that "[u]nquestionably, the Court of Common Pleas may reverse, vacate or modify an order of an agency unless it finds that the order is supported by reliable, probative and substantial evidence, but, where it makes such a finding, it can only affirm and cannot reverse, vacate or modify." *Henry's Café, Inc.,* 170 Ohio St. at 236. Thus, "the Court of Common Pleas has no authority to modify a penalty that the agency was authorized to and did impose, on the ground that the agency abused its discretion." *Id.* at paragraph three of the syllabus. This Court has previously considered whether it could modify or overrule *Henry's Café, Inc.* and concluded that it could not.

*Horn,* 2017-Ohio-231, at ¶ 17.  In *Horn* we recited well-settled law: "This Court has no authority to modify a decision of the Ohio Supreme Court." (Internal quotations and citation omitted.)  *Id.* The court of common pleas concluded that the law in *Henry's Café, Inc.* precluded it from reviewing the penalty in her case and Ms. Barr has not challenged that finding; Ms. Barr has made no argument that *Henry's Café, Inc.* was inapplicable to her situation.  *See* App.R. 16(A)(7). Moreover, the court of common pleas concluded that even if it could review the penalty, it would nonetheless affirm the decision of SPBR in toto.  Ms. Barr has not addressed this alternate finding.

{¶29}  Given Ms. Barr's arguments on appeal, she has not demonstrated that the court of common pleas abused its discretion.  Her third assignment of error is overruled.

III.

{¶30}  Ms. Barr's assignments of error are overruled.  The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

BRENT L. ENGLISH, Attorney at Law, for Appellant.

EUGENE NEVADA, Attorney at Law, for Appellee.